## STATE v. ANDREW J. LeFEBVRE.[1]

April 13, 1928.

No. 26,358.

**Act of 1925 regulating use of highways by intrastate motor carriers does not violate federal constitution.**

1. The state has control of its public highways and may constitutionally prohibit intrastate common carriers by motor vehicles from carrying on business thereon unless they obtain from the railroad and warehouse commission a certificate of public convenience and necessity as provided by L. 1925, c. 185. The statute does not apply to interstate commerce nor does it assume to make a carrier for hire a common carrier against his will. The carrier must be a common carrier in fact. In requiring a certificate of convenience and public necessity as a condition to doing business on the public highways as an intrastate common carrier the statute does not offend the interstate commerce clause of the federal constitution or the fourteenth amendment.

**An exemption of interstate commerce in act is not discriminatory or based on improper classification.**

2. L. 1925, p. 178, c. 185, § 14, which has to do with the granting of certificates of public convenience and necessity to common carriers by automobile on public highways, provides that it shall not apply to interstate commerce except as it may be permitted under the provisions of the constitution and acts of congress. This action is not unconstitutional as discriminatory or without a proper basis of classification.

**Act does not violate constitution in exempting carriers of school children.**

3. Nor is § 2(f), (h), unconstitutional in excluding those engaged exclusively in the transportation of children to or from school.

**Or in excluding carriage of farm products to primary market.**

4. Nor in excluding those engaged exclusively in transporting farm products from the point of production to the primary market, nor in excluding those transporting or delivering dairy products.

**Or in excluding intracity freight carriers.**

5. Nor in excluding intracity freight carriers or carriers between contiguous municipalities.

[1] Reported in 219 N. W. 167.

**Or in excluding operators of taxicabs.**

6. Nor in excluding those engaged in operating taxicabs.

**Or in excluding operators of hotel busses.**

7. Nor in excluding those engaged in operating hotel busses.

**Or in delegating to railroad commission issue of certificates.**

8. The delegation of power to the railroad and warehouse commission to determine upon the issuance of certificates of public necessity and convenience is not unconstitutional.

**Existing operators do not have constitutional right to certificates.**

9. Carriers operating at the date of the enactment of the statute are not entitled to certificates as a matter of constitutional right.

**Right to carry mail on federal aid highway gives no right to use road for other purposes.**

10. The defendant cannot claim exemption from the statute because he was carrying mail upon a federal aid highway at the time of its enactment.

Motor Vehicles, 42 C. J. p. 648 n. 61; p. 680 n. 45; p. 683 n. 97; p. 686 n. 81, 82, 83, 84; p. 687 n. 85; p. 695 n. 44; p. 696 n. 47; p. 697 n. 71; p. 698 n. 78, 79, 84, 94.

See 5 R. C. L. pp. 703, 715; 1 R. C. L. Supp. pp. 1481, 1488; 4 R. C. L. Supp. 342; 5 R. C. L. Supp. 297.

Defendant appealed from an order of the district court for Itasca county, Wright, J. denying his motion for a new trial. Affirmed.

*Alfred L. Thwing* and *R. A. McOuat,* for appellant.

*Clifford L. Hilton,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *Hayner N. Larson,* for the state.

*Gannon, Strizich & Farnand,* for objector, Mesaba Transportation Company.

DIBELL, J.

The defendant appeals from the order of the district court of Itasca county denying his motion for a new trial. The case came to the district court upon appeal from an order of the railroad and warehouse commission denying his application for a certificate of

public convenience and necessity authorizing him to operate motor vehicles between Grand Rapids and Hibbing as a common carrier. There is no settled case. We have only the findings of fact. Only constitutional questions are presented.

Prior to 1925 the defendant had a contract with the government for the carrying of mail between Grand Rapids and Hibbing. In connection therewith he operated a motor bus line between the two points as termini, serving intermediate towns, and traveled a federal aid and state trunk highway. On May 12, 1925, he applied to the railroad and warehouse commission pursuant to the terms of L. 1925, p. 178, c. 185, for a certificate of public convenience and necessity, without which he could not operate as a common carrier. The Mesaba Transportation Company made a similar application and objected to the granting of defendant's application. Hearings were had. On December 8, 1925, the defendant was granted a limited certificate permitting him to carry passengers on his trips while carrying the United States mail. The Mesaba Transportation Company was granted a certificate. Defendant appealed to the district court of Itasca county. The district court affirmed the order of the railroad and warehouse commission.

The defendant attacks the constitutionality of the statute. The state claims that having invoked a privilege under the statute and received a benefit he cannot attack its constitutionality. We pass this question without intimating a view and go directly to the constitutional objections.

1. The state has control of the public highways and may regulate and on occasion even prohibit transportation by common carriers thereon. This question was considered at length in Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449. The court said [at p. 68]:

"To do business upon public streets is not a matter of right like the right of ordinary travel. Nor is the right to carry on such a business to be placed upon the same basis as that of conducting a lawful occupation upon private property within a municipality. The use of public streets for private enterprise may be for the public good, but even so it is a privilege that may be granted, regu-

lated or withheld. The authorities * * * hold that a municipality having the care and control of its streets and the authority to look to their convenient and safe travel may regulate and even exclude the carrying on of a transportation business thereon for private gain, or grant the privilege to some and exclude others, since no one has a right as of course to carry on a private business upon the public streets."

In that case there was involved an ordinance of Duluth regulating the operation of motor vehicles carrying passengers for hire and excluding them from streets occupied by the street railway. There is involved in the case before us L. 1925, p. 178, c. 185, entitled:

"An act providing for supervision and regulation of transportation of persons and property for hire as common carriers on any public highway in this state, by motor vehicles, and for the safe operation thereof, and subjecting such transportation to the jurisdiction and control of the railroad and warehouse commission; and defining what constitutes such transportation for hire, and providing for the enforcement of this act and for punishment for violation thereof."

The statute was enacted to meet new conditions brought about by the entry of motor vehicles into the business of transporting passengers and freight over the state highways as common carriers. It has in view, directly or indirectly, public safety and convenience; but principally its purpose is the control and regulation of common carriers by motor vehicles and a possible resultant prohibition of competition. Transportation companies are forbidden to operate except upon compliance with the act. No company may operate "for the transportation of persons or property for hire as a common carrier on any public highway without first having obtained from the commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation." [§ 5(a).] Provision is made for the application to the commission and hearings thereon and the granting of the certificates if public convenience and necessity require it. The company must file a bond to insure its compliance with the statute, and

must furnish public liability or indemnity insurance. The act excludes operations in interstate commerce unless permitted by the federal constitution or some act of congress. Time schedules and tariff rates are regulated by the commission. An auto transportation company is defined as meaning "every corporation or person owning, controlling, operating or managing any motor-propelled vehicle not usually operated on or over rails used in the business of transporting persons or property for compensation as common carriers over any public highway in this state between fixed termini or over a regular route." [§ 2(h).] Certain kinds of motor transportation are excluded. They are noted later.

In Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. ed. 623, 38 A. L. R. 286, it was held that a statute requiring a certificate of public convenience and necessity was unconstitutional as applied to one using federal aid highways as a common carrier purely in interstate commerce because in violation of the commerce clause of the federal constitution and also as defeating the purpose of the federal aid statute. 23 USCA, §§ 1-53. The statute [Laws Wash. 1921, c. 111, § 4] requiring the certificate applied to transportation "for compensation between fixed termini or over a regular route in this state." It did not exclude interstate carriers. In George W. Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 69 L. ed. 627, it was held that a somewhat similar statute was unconstitutional as an interference with interstate commerce when applied to a common carrier engaged exclusively in interstate commerce irrespective of the fact that the highway over which it traveled was not a federal aid highway. These cases give no trouble, for our statute applies only to common carriers engaged in intrastate commerce; or to interstate carriers only when the federal constitution or an act of congress permits. And the defendant is not an interstate carrier.

In Frost & Frost T. Co. v. Railroad Comm. 271 U. S. 583, 46 S. Ct. 605, 70 L. ed. 1101, 47 A. L. R. 457, it was held that an auto transportation statute, in so far as it prevented private carriers by auto from operating over the state highways between fixed termini without having first secured a certificate of public convenience and necessity, was unconstitutional. That case does not affect the case

before us because our statute applies exclusively to common carriers. The statute there defined a transportation company as one using motor vehicles "in the business of transportation of persons or property, or as a common carrier, for compensation, over any public highway in this state between fixed termini or over a regular route," etc. Cal. St. 1919, p. 458, c. 280, § 2(c). It was not limited to common carriers.

The legislature may not by its declaration make a carrier for hire a common carrier and so compel it to devote its property to a public use. Producers Transp. Co. v. Railroad Comm. 251 U. S. 228, 40 S. Ct. 131, 64 L. ed. 239; Michigan Pub. Util. Comm. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. ed. 445, 36 A. L. R. 1105; Frost & Frost T. Co. v. Railroad Comm. 271 U. S. 583, 46 S. Ct. 605, 70 L. ed. 1101, 47 A. L. R. 457. Doing so constitutes a taking of private property for public use without compensation and violates the fourteenth amendment.

The Minnesota statute does not attempt such a thing. It applies only to common carriers "between fixed termini or over a regular route." It does not make a carrier for hire a common carrier subject to its provisions. This is illustrated by State v. Boyd Tr. & St. Co. 168 Minn. 190, 209 N. W. 872. It is of course conceded that a state may regulate the use of its highways even by those engaged in interstate commerce in the absence of direct national legislation. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. ed. 222; Michigan Pub. Util. Comm. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. ed. 445, 36 A. L. R. 1105; Interstate Busses Corp. v. Holyoke St. Ry. Co. 273 U. S. 45, 47 S. Ct. 298, 71 L. ed. 530; Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. ed. 966; State v. Oligney, 162 Minn. 302, 202 N. W. 893. An interstate carrier may be required to contribute to their upkeep. Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. ed. 1146. But a statute must not unduly burden interstate commerce or take property without compensation by seeking to make a private carrier for hire a common carrier by legislative fiat. We think we have correctly stated the effect of the federal authorities. If so, the statute is not unconstitutional in requiring

a certificate as a condition to doing intrastate business as a common carrier on the state highways. And we pass to the defendant's other claims of unconstitutionality.

2. The defendant contends that various classifications of the statute are arbitrary and unconstitutional. We consider them briefly. The law is settled that classification is legislative in character, that presumably the legislature has investigated if it does not have first-hand knowledge, and that its classification must be taken as reasonable unless the court can see that it is not. The question has been discussed and the authorities cited over and over and so recently that we should not review them now.

The defendant claims that § 14 of the act, which provides that it shall not apply to interstate commerce "except in so far as the same may be permitted under the provisions of the Constitution of the United States and the Acts of Congress," is discriminatory and unconstitutional. If the statute applied to interstate commerce, a claim of unconstitutionality upon the ground that it interfered with interstate commerce would be made.

There is nothing wrong with this classification. The exclusion of those who might come within the provisions of a controlling federal law, if one should be enacted, or within the provisions of the federal constitution, is not unconstitutional. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412 (excluding from compensation act those engaged in interstate commerce). This section is in recognition of the rights of one engaged in interstate commerce and is intended to avoid a constitutional objection which otherwise would be asserted. Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. ed. 623, 38 A. L. R. 286; George W. Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 69 L. ed. 627.

3. Section 2 (f) excepts from the operation of the statute

"motor vehicles used exclusively in transporting children to or from school, and motor vehicles used by any transportation company engaged exclusively in transporting agricultural, horticultural, dairy or other farm products from the point of production to the

primary market, or to motor vehicles used exclusively in transporting or delivering dairy products or to motor vehicles engaged exclusively in transporting or delivering freight within any city or village in this state or between contiguous villages or cities, or by any transportation company engaged in operating taxicabs, or hotel busses to or from a depot to a hotel."

Section 2(h) excepts in similar language persons or corporations so engaged in transportation.

The exception of carriers engaged exclusively in the transportation of children to or from school is not unreasonable or arbitrary. School busses are not common carriers within the meaning of the statute. They convey children in certain localities to certain schools and are operated by the districts or under contract with them. A similar contention was ruled against the claim of the defendant in Smallwood v. Jeter, 42 Idaho, 169, 244 P. 149.

4. The exemption of transportation companies engaged exclusively in transporting agricultural, horticultural, dairy or other farm products from the point of production to the primary market, and motor vehicles used exclusively in transporting or delivering dairy products, is not unreasonable or arbitrary.

The state calls attention to art. 1, § 18, of the constitution which permits one to sell or peddle agricultural products produced by himself without obtaining a license. In Minnesota W. G. Co-op. M. Assn. v. Huggins, Jr. 162 Minn. 471, 480, 203 N. W. 420, the court said that this provision was a recognition that the tillers of the soil are in a different position in reference to the marketing of their products. This case gives no direct help. But the legislature might conclude that the conditions surrounding the transportation of agricultural and dairy products from the point of production so differ from ordinary common carrier transportation that a certificate of public convenience and necessity should not be required. Favoritism might have been intended, but we do not assume it or find it. The classification seems on a fair basis. It may be noted that such a classification is sustained as not arbitrary or unconstitutional as a basis for taxation. McReavy v. Holm, 166 Minn. 22,

206 N. W. 942. And see Jefferson Highway Tr. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960; Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627.

5. The exemption of intracity freight carriers and carriers of freight between contiguous municipalities is not arbitrary or unreasonable.

The delivery of freight within municipalities or between contiguous municipalities is so different from the carrying of freight between different termini on a fixed route, on a fixed schedule, and on a specified tariff as to indicate a sufficient reason for the exemption. See Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449. There is such a difference that the legislature may base a classification upon it.

6. The exception of those engaged in operating taxicabs is not unreasonable or arbitrary or fanciful. The difference between the operation of taxicabs and motor vehicles operating between fixed termini over a regular route is apparent. If they should be operated as common carriers between fixed termini, and as otherwise contemplated by the statute, they would be subject to statutory regulation and control. The distinction between taxicabs and motor vehicles operated as the statute contemplates is noted in Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449. And see Huston v. City of Des Moines, 176 Iowa, 455, 156 N. W. 883; Decker v. City of Wichita, 109 Kan. 796, 202 P. 89; City of Memphis v. State, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056.

7. The exemption of hotel busses suggests no unfair discrimination. Usually their regulation, if any, is local. It does not help defendant to suggest that a bus may run between a depot in Grand Rapids and a hotel in Hibbing or vice versa and do the work of a common carrier just as one having a certificate of convenience and necessity. That would be an evasion of the granted exception, easily taken care of by the court. The defendant cites State v. Crosson, 33 Idaho, 140, 190 P. 922. This case does not reach the precise question before us and is not controlling.

8. The delegation of the power to the railroad and warehouse commission offends no constitutional provision. See State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. .782; State v. G. N. Ry. Co. 100· Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250; State v. M. & O. Power Co. 121 Minn. 421, 141 N. W. 839; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; State ex rel. Hilton v. Four Lakes Tel. Co. 141 Minn. 124, 169 N. W. 480; State ex rel. Dybdal v. State Sec. Comm. 145 Minn. 221, 176 N. W. 759; 5 Dunnell, Minn. Dig. (2 ed.) § 8075, et seq.; 1 Id. §§ 1587, 1600, and cases cited; Smith v. State, 130 Md. 482, 100 A. 778; State v. Darazzo, 97 Conn. 728, 118 A. 81; State v. Johnson, 75 Mont. 240, 243 P. 1073; In re James, 99 Vt. 265, 132 A. 40. The commission does not make the law; it administers it.

9. The claim of the defendant that existing operators, and the defendant was one, were entitled to certificates as a matter of constitutional right is without merit. Section 10 of the chapter cares for existing operators liberally. A carrier operating at the time of the enactment of the statute has no constitutional right to continue without observing it.

10. The defendant's contention that the state cannot limit his operation as a common carrier because it is conducted on a federal aid highway is met by State v. Oligney, 162 Minn. 302, 202 N. W. 893. And see Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. ed. 966; Western Transp. Co. v. People (Colo.) 261 P. 1. He cannot claim exemption because he is under contract to carry United States mail between Hibbing and Grand Rapids. The statute does not interfere with his carrying of mail. The commission has gone further and permitted him to carry passengers when he carries mail. The fact that he has a right to carry mail on a federal aid highway does not give him authority to use the road for other distinct pur-poses as a common carrier. See State v. Johnson, 75 Mont. 240, 143 P. 1073.

We have covered the substance of all claims made by the defend-ant and find no constitutional or other fault in the statute.

Order affirmed.

HILTON, J. took no part.